# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| **U.S. COMMODITY FUTURES TRADING COMMISSION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No: 4:11-CV-190HTW-LRA** |
| **v.** | ) | |
| **TRADEWIND INVESTMENTS, LLC, GARY FUTCH and BRADLEY FUTCH,** | ) | |
| **Defendants.** | ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT

## TABLE OF CONTENTS

I.      **INTRODUCTION**................................................................................................ 1

II.     **THE ALLEGATIONS IN THE COMPLAINT** ............................................. 2

III.    **STANDARD OF REVIEW** ....................................................................... 5

IV.    **ARGUMENT** ............................................................................................ 6

   A.   **Defendants have Fair Notice of the Claims Asserted Against Them** ........................ 6

   B.   **The Complaint Complies with Rule 9(b)** ................................................... 7

      1.  Who..................................................................................................... 8

      2.  What ................................................................................................... 9

      3.  When ................................................................................................ 11

      4.  Where ............................................................................................... 12

      5.  How................................................................................................... 12

   C.   **The Commission has Alleged All Required Elements For Violations of the Act** ... 13

      1.  **The Commission has stated a cause of action for violation of Section 4c(b) of the Act and Commission Regulation 33.10** .................................................. 13

      2.  **The Commission has stated a cause of action for violation of Section 4o(1) of the Act**................................................................................................. 17

V.     **CONCLUSION** ...................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336 (5th Cir. 2002) ................................... 6

*Alexander v. Futch,* Case No. 09CV041(B) (Cir. Ct. Lauderdale Co., Miss., complaint filed Apr. 21, 2009) ......................................................................................................................... 7

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ........................................................... 5

*CFTC v.  Skorupskas*, 605 F. Supp. 923 (E.D. Mich 1985).................................................. 17, 18

*CFTC v. Aurifex Commodities Research Co.*, No. 1:06-CV-166, 2008 WL 299002 (W.D. Mich., Feb. 1, 2008) ................................................................................................................. 18

*CFTC v. Bradley*, 408 F. Supp. 2d 1214 (N.D. Okla. 2005) ....................................................... 11

*CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321 (11th Cir. 2002)........................................... 14, 15

*CFTC v. Reed*, 481 F. Supp. 2d 1190 (D. Colo. 2007) ..................................................... 11

*CFTC v. Rosenberg*, 85 F. Supp. 2d 424 (D.N.J. 2000) ..................................................... 16

*CFTC v. Savage*, 611 F.2d 270 (9th Cir. 1979) ..................................................... 16

*CFTC v. Weinberg*, 287 F. Supp. 2d 1100 (C.D. Cal 2003) ..................................................... 18

*Cyrak v. Lemon,* 919 F.2d 320 (5th Cir. 1990) ..................................................... 14

*Damato v. Hermanson*, 153 F.3d 464 (7th Cir. 1998) ..................................................... 18

*Davis v. Coopers & Lybrand*, 787 F. Supp. 787 (N.D. Ill. 1992).................................................... 18

*Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333 (5th Cir. 2008) ..................................................... 6

*Drexel Burnham Lambert, Inc. v. CFTC*, 850 F.2d 742 (D.C. Cir. 1988)................................... 16

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976)......................................................... 16

*Ettem USA, Inc. v. Kollmoregan Corp.*, 2005 U.S. Dist. LEXIS 29189 (S.D. Tex. October 29, 2005) ......................................................................................................................... 11, 12

*Hodges v. H & R Investments, Ltd.,* 668 F. Supp. 545 (N.D. Miss. 1987) ................................... 12

*In re Commodities Int'l Corp.*, [1996-1998 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 26,943 (CFTC Jan. 14, 1997) ............................................................................... 15

*In re Futch,* Adv. Proc. No. 09-00144-NPO, 2011 WL 576071 (Bankr. S.D. Miss., Feb. 4, 2011) ............................................................................................................................................ 7

*In Re Natural Gas*, 358 F. Supp. 2d 336 (S.D.N.Y 2005) ............................................................ 11

*Jones v. Greninger*, 188 F.3d 322 (5th Cir. 1999) ...................................................................... 5

*Lake Shore Asset Mgmt. v. CFTC*, 511 F.3d 762, 766 (7th Cir. 2007) ...................................... 15

*Lanier v. Futch,* 11-cv-00415-HTW-LRA (S.D. Miss., Notice of Appeal filed July 8, 2011) ...... 7

*Lanier v. Tradewind Investments, LLC,* No. 08 L 013688 (Cir. Ct. Cook Co., Ill., complaint filed Feb. 20, 2009) ............................................................................................................................ 7

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009) ...................................................... 5

*Madel v. Anspacher & Assoc., Inc.*, [1987-1990 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 24,412 (CFTC Mar. 14, 1989) .................................................................................................. 15

*Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464 (5th Cir. 2004)............... 5

*Melder v. Morris,* 27 F.3d 1097 (5th Cir. 1994) ........................................................................ 14

*Messer v. E.F. Hutton & Co.*, 847 F.2d 673 (11th Cir. 1988) .................................................... 18

*Saxe v. E.F. Hutton & Co., Inc.*, 789 F.2d 105 (2d Cir. 1986) .................................................... 15

*Shushany v. Allwaste, Inc.*, 992 F.2d 517 (5th Cir. 1993) .......................................................... 14

*Slusser v. CFTC,* 210 F.3d 783 (7th Cir. 2000) ........................................................................ 15

*Tuchman v. DSC Comm. Corp.*, 14 F.3d 1061 (5th Cir. 1994)................................................ 6, 14

*United States ex rel. Johnson v. Shell Oil Co.,* 183 F.R.D. 204 (S.D. Tex. 1998) ...................... 12

**Statutes**

15 U.S.C. § 78j(b) (2006) .......................................................................................................... 14

7 U.S.C. § 6b................................................................................................................................ 18

7 U.S.C. § 6c(b) (2006)................................................................................................ 5, 13, 14, 15

7 U.S.C. § 6*o*(1) ........................................................................................................................ 18

7 U.S.C. § 6*o*(1)(A), (B) (2006)................................................................................................ 5

**Other Authorities**

*Bailey v. MF Global, Inc.*, FINRA Arb. No. 08-04396 (award issued Mar. 26, 2010) .................. 7

*Holmes v. MF Global, Inc.,* FINRA Arb. No. 08-04194 (award issued July 9, 2010) ................... 7

**Regulations**

17 C.F.R. § 33.10 (2011) ................................................................................................. 13, 14, 15

## I.   INTRODUCTION

On November 29, 2011, U.S. Commodity Futures Trading Commission ("Commission" or "CFTC") filed a complaint alleging a broad course of fraudulent conduct in violation of the Commodity Exchange Act ("Act") by Defendants Gary and Bradley Futch and their company, Tradewind Investments, LLC ("Tradewind") (collectively, "Defendants").  *See* Docket #1.  As described in further detail below, Defendants' course of fraudulent conduct has been the subject of numerous of prior legal proceedings, including state court lawsuits, regulatory arbitrations, and an adversary proceeding in the United States Bankruptcy Court for the Southern District of Mississippi.  The Commission's Complaint for Injunctive and Other Equitable Relief and Penalties Under the Commodity Exchange Act ("Complaint"), which relies on some or all of the same underlying facts as the prior actions, fully details the who, what, when, where, and how of Defendant's fraud.  The Complaint also alleges facts establishing all of the required elements for the violations of the Act the Commission has charged in the Complaint.

The Defendants have now filed a Motion to Dismiss the Complaint ("Motion") and they argue in their Memorandum of Law in Support of the Motion ("Memorandum") that: (a) the Complaint fails to satisfy the pleading requirements of Federal Rule of Civil Procedure ("Rule") 9(b); and (b) the Commission has failed to allege certain necessary elements of fraud under the Act, as required by Rule 12(b)(6).  As discussed more fully below, the Defendants' argument that the Commission failed to satisfy Rule 9(b) relies on a myopic reading of the Complaint, while the argument that the Commission failed to allege essential elements of fraud relies exclusively on law relating to the pleading of securities fraud by private parties.  The Commission, as an independent federal agency, need not allege reliance or causation. Accordingly, the Court should deny Defendants' Motion.

1

## II.      THE ALLEGATIONS IN THE COMPLAINT

The CFTC's Complaint alleges that, in early 2007, Bradley Futch, who had just graduated from college, began doing business under the name "Tradewind Investments." Complaint ¶ 13.  Shortly thereafter, Bradley Futch's father, Gary Futch, who had worked for a different commodities firm for several years, decided to assist his son with the business.  *Id.* ¶¶ 1, 13.  In early 2008, Bradley Futch caused "Tradewind Investments, LLC" to be formed.  *Id.* ¶ 13. Tradewind was registered with the Commission as a commodity trading advisor ("CTA") shortly thereafter, with both Bradley and Gary Futch registered with the Commission as associated persons ("APs") of Tradewind.  *Id.* ¶¶ 10-12.  Defendants' clients gave Tradewind the power to trade their accounts and throughout Tradewind's existence, Gary Futch handled the majority of the client contact while Bradley Futch handled most of the trading.  *Id.* ¶ 13.

When it first opened, Tradewind required a minimum investment of $50,000 from each client; that amount was raised to $500,000 in early 2008.  *Id.* ¶ 14.  Tradewind took a monthly incentive fee of 30% of its clients' net trading profits and a monthly management fee of 1/12 of 1% of the value of its clients' accounts.  *Id.*  This compensation, which was shared by Gary and Bradley Futch, totaled approximately $250,000 through October 2008.  *Id.*  Tradewind did no public advertising, instead relying on word of mouth to attract new clients.  *Id.* ¶ 15.  By mid-2008, Tradewind had approximately 20 clients, several of whom had opened multiple accounts. *Id.*

Tradewind's trading strategy focused on selling out-of-the-money options spreads on S&P 500 Index Futures.  *Id.* ¶ 16.  When prospective clients approached Defendants, they provided at least some of them with a document titled "Trade Methodology," which touted Tradewind's "risk reduction strategies" as follows:

2

> When something dramatic like [September 11th or the market crash of 1987] happens the market typically overreacts and large swings can take place…. In response to this, Tradewind has developed risk reduction strategies to protect against unlimited risk.  For each trade, we can hedge our sold option positions by purchasing options at precisely calculated levels.  For every option that is sold the strategy suggests purchasing a corresponding risk-limiting option.  By purchasing these protective options above or below each sold call and put, **we can limit our market exposure in the event of a severe or sudden move in the market.**

(emphasis added).  *Id.* ¶ 16.  To further reduce risk, Defendants explained that Tradewind used no more than 50% -- later reduced to 25% -- of each client's funds in each particular trade.  *Id.* ¶ 16.

In their oral and written communications with current and prospective clients, both Gary and Bradley Futch made misleading, fraudulent statements.  *Id.* ¶ 17.  In particular, they misrepresented their respective roles with Tradewind, leading prospective clients to believe that Gary Futch, who had years of commodities experience, would be trading their accounts, instead of Bradley Futch, who was a recent college graduate and had little commodities experience.  *Id.* They also falsely described Tradewind's trading strategy as guaranteeing that it would never: (a) subject its clients to margin calls; (b) risk more than 25% of any client's money in a single trade; and (c) risk more than the total amount of the client's investment.  *Id.*

For example, in a January 29, 2008 email to a client, Gary Futch wrote:

> Most futures brokers trade using margin as this leverage allows for larger profit potential.  However, we DO NOT TRADE ON THE MARGIN capability of your account.   We NEVER expose you to more than what cash you have in the account.   ALL brokerage firms (futures) want a personal guarantee on corporate accounts in case the client 'overtrades' and gets margin calls that the corp can't answer.  I assure you we will not put you in this situation.

*Id.* ¶ 18.  Similarly, Gary Futch orally told at least one client that Tradewind would never place more than 25% of the client's funds at risk at one time and that the client would never receive a margin call.  *Id.* ¶ 19.

3

In a May 28, 2008 letter to a third client, the Futches made further fraudulent statements, claiming that Tradewind never left positions "naked," instead it was "ALWAYS buy[ing] the protection!"  *Id*. ¶20.  They also falsely claimed that Tradewind never risked more than 25% of a client's account in a single trade, stating:

> We also only put 25% max of your money at risk into any one trade.  That means that if the trade was a complete loss, it would result in losing 25% of your account.   That being said, we do not allow complete losses using our risk management rules.

*Id.*  Finally, the Futches claimed that Tradewind would "not trade on margin as we do not want to deal with margin calls . . . . [T]he value of your account is the Maximum risk."

*Id.*

Each of these statements was false.  *Id.* ¶ 21.  In making these statements, the Futches knew or recklessly disregarded the facts that: (a) the risks inherent in selling options were much higher than they led their clients to believe; (b) their clients could receive margin calls, especially in particularly volatile markets; (c) their use of only 25% of a customer's funds to make a particular trade did not mean that the customer's maximum possible losses on a trade were limited to that 25%; and (d) their trading strategy involved frequently leaving trades "naked" during the trading day, with the hope that the market would move in a favorable direction before the end of trading.  *Id.* ¶ 22.  This practice exposed Tradewind clients to signficantly higher levels of risk than they had been led to believe they would be exposed to, particularly on days of high market volatility.  *Id.*

Further, these misrepresentations were intended to and did mislead Tradewind clients into believing that Tradewind had developed a "safe" strategy for selling options.  *Id.* ¶ 21. In fact, as the events of October 10, 2008 demonstrated, Tradewind clients were subject to enormous risks. *Id.*  On that day, Tradewind's trading strategy failed to protect its clients from the day's

4

particularly volatile markets.  *Id.* ¶ 23.  Tradewind had a credit call spread on and Bradley Futch called Tradewind's introducing broker to leg out of one side of the spread, but, hoping that the market would quickly rebound, he delayed entering the other side of the order.  *Id.*  When the market failed to rebound as Bradley Futch had hoped, Tradewind clients lost their entire investment and they received  margin calls in an aggregate of approximately $5.6 million, which approximated the total values of their accounts.  *Id.* ¶¶ 21, 23.

Gary and Bradley Futch, acting by and through Tradewind, engaged in the acts and practices described above knowingly or with reckless disregard for the truth.  *Id.* ¶ 25.  The Complaint alleges two violations of the act:  (1) commodity options fraud in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2006), and Commission Regulation ("Regulation") 33.10, 17 C.F.R. § 33.10 (2011), (Count One); and (2) fraud by a CTA and its APs in violation of Section 4*o*(1)(A) and (B), 7 U.S.C. § 6*o*(1)(A), (B) (2006), (Count Two).

## III.   STANDARD OF REVIEW

Although a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted, motions to dismiss are viewed with disfavor and rarely granted in the Fifth Circuit.  *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).  When reviewing the sufficiency of a complaint pursuant to a motion to dismiss, a court must accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *Martin K. Eby Constr. Co. v. DART,* 369 F.3d 464, 467 (5th Cir. 2004) (*quoting Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).  A Rule 12(b)(6) motion to dismiss should be granted only when the complaint does not include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

Rule 9(b) provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other conditions of mind of a person may be averred generally."  Thus, while Rule 9(b) requires a party to plead the circumstances constituting fraud "with particularity," it allows a party to plead conditions of the mind, such as scienter, "generally."  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (*citing Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). With respect to the circumstances of the fraud, to satisfy Rule 9(b) a plaintiff must plead the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Tuchman*, 14 F.3d at 1068.  Put simply, a plaintiff must allege "'the who, what, when, where, and how' of the events at issue." *Dorsey*, 540 F.3d. at 339 (*quoting ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002) (internal quotations omitted)).

## IV.   ARGUMENT

The allegations in the Commission's Complaint have been pled with the particularity required under Rule 9(b) in that they establish in detail the who, what, when, where, and how of Defendants' fraudulent course of conduct.  Furthermore, the Commission has properly alleged detailed, non-conclusory facts to support all elements of the violations of the Act set forth in the two counts of the Complaint.  Defendants' baseless arguments to the contrary ignore the majority of the Complaint's allegations and are grounded in a misapprehension of the relevant law.  Accordingly, Defendants' Motion should be denied.

### A.   Defendants have Fair Notice of the Claims Asserted Against Them

As a preliminary matter, any contention by Defendants that they lack fair notice of the factual basis for the CFTC's claims must be rejected in its entirety.  Defendants know precisely

what facts underlie the CFTC's Complaint as they have been parties to a number of other proceedings concerning some or all of the same underlying facts, including:  (1) a Mississippi state court case, *Alexander v. Futch,* Case No. 09CV041(B) (Cir. Ct. Lauderdale Co., Miss., complaint filed Apr. 21, 2009); (2) an Illinois state court case, *Lanier v. Tradewind Investments, LLC,* No. 08 L 013688 (Cir. Ct. Cook Co., Ill., complaint filed Feb. 20, 2009); and (3) two arbitration proceedings through the Financial Regulatory Authority ("FINRA"), *Holmes v. MF Global, Inc.,* FINRA Arb. No. 08-04194 (award issued July 9, 2010); *Bailey v. MF Global, Inc.*, FINRA Arb. No. 08-04396 (award issued Mar. 26, 2010). [1]

Furthermore, the same issues that underlie this case were the subject of a consolidated adversary proceeding in personal bankruptcies filed by Gary and Bradley Futch.  Both Gary and Bradley Futch testified at a December 3, 2010 hearing held by the Bankruptcy Court, which subsequently issued a detailed Memorandum Opinion including detailed findings of fact regarding most of the same facts underlying the Commission's Complaint.  *See In re Futch,* Adv. Proc. No. 09-00144-NPO, 2011 WL 576071 (Bankr. S.D. Miss., Feb. 4, 2011).  That matter is now pending before this Court on appeal.  *See Lanier v. Futch,* 11-cv-00415-HTW-LRA (S.D. Miss., Notice of Appeal filed July 8, 2011).  For the Defendants to contend that they are somehow unaware of the precise nature of the Commission's allegations of fraud is, at best, disingenuous.

**B.    The Complaint Complies with Rule 9(b)**

The Commission's Complaint more than adequately satisfies the "who, what, when, where, and how" requirements of Rule 9(b) in its allegations of the Defendants' fraudulent acts. Although the fraud was complex and occurred over a period of time, the Complaint has provided

---

[1] As a general policy, the Commission refrains from identifying fraud victims in publicly-filed complaints, but most of Defendants' clients participated as plaintiffs or claimants in one of more of these proceedings.

more than sufficient detail for the Defendants to be on notice of the Commission's clams and to frame an answer to the Complaint.

In their Memorandum, the Defendants focus on five particular paragraphs of the Complaint that they contend fail to satisfy all of the particularity requirements of Rule 9(b). Memorandum at 7-11.  But Rule 9(b) requires a plaintiff to allege fraud with sufficient particularity <u>over the course of an entire complaint</u>; it does not force a plaintiff to meet the absurd requirement of including the "who, what, when, where, and how" in each and every paragraph of the Complaint.  To the extent that Defendants' Motion is grounded in the notion that the Court should examine paragraphs of the Complaint in isolation to determine whether Rule 9(b) has been satisfied, that notion should be firmly rejected.  When considered as a whole, the 39 paragraphs of the Complaint more than meet the pleading requirements of Rule 9(b).

1. <u>Who</u>

The Complaint contains allegations throughout establishing that each of the Defendants knowingly engaged in misrepresentations of material fact.  Complaint ¶¶ 2, 17, 18, 19, 20, 22, 25.  When both Gary and Bradley Futch were involved in particular misrepresentations, the Complaint specifies that.  *See, e.g., id.* ¶¶ 2, 17, 20, 22, 25.  When only one of the individual defendants was involved in particular misrepresentations, the Complaint specifies that.  *See, e.g., id*. ¶¶ 18, 19.  In addition, the Complaint alleges specific facts establishing that Gary and Bradley Futch were controlling agents of Tradewind and that Tradewind is, therefore, liable for all of their acts in violation of the Act.  *See id.*  ¶¶ 10, 11, 13, 29-31, 35, 37-38.  These allegations establish the "who" of the fraudulent conduct with the requisite particularity.

2.      <u>What</u>

The Complaint also includes detailed, specific allegations about the nature of the Defendants' fraudulent misrepresentations.  The second paragraph of the Complaint provides an overview of the alleged misrepresentations that Gary and Bradley Futch made in the course of soliciting clients for Tradewind, which included:

> (a) misrepresenting their respective roles with Tradewind; (b) promising that Tradewind would never leave its clients' options spreads "naked" without protective positions in place; (c) promising that no more than 25% of a client's funds would ever be at risk with any given trade; and (d) claiming that Tradewind's strategy ensured that its clients would never receive margin calls.

*Id*. ¶ 2.

The Complaint the goes on to provide further specific details regarding each of these misrepresentations, including:

- That both Gary and Bradley Futch led prospective clients to believe that Gary Futch, who had years of commodities experience, would be trading their accounts, instead of Bradley Futch, who was a recent college graduate and inexperienced in commodities.  *Id*. ¶ 17.

- That both Gary and Bradley Futch claimed, in a May 28, 2002 letter to a client,[2] that Tradewind never left positions "naked," and instead it would "ALWAYS buy the protection," when, in fact, Gary and Bradley Futch both knew that Tradewind's trading strategy involved frequently leaving trades "naked" during the trading day.  *Id*. ¶¶ 20, 22.

- That both Gary and Bradley Futch claimed, in the same May 28 letter, that "We also only put 25% max of your money at risk into any one trade"—a misrepresentation that Gary

---

[2] As noted above, the Commission prefers to protect victims' privacy in its publicly-filed complaints. Accordingly, it did not incorporate this and the other documents referred to in the Complaint into the Complaint or identify the particular Tradewind clients by name.  Because the Complaint identifies the dates of these documents and includes extensive quotations from them, there is no question that Defendants can identify these documents and the clients who received them.

Futch also made orally to at least one client—when both Gary and Bradley Futch knew that their use of only 25% of a customer's funds to make a particular trade did not mean that the customer's maximum possible losses on that trade were limited to that 25%. *Id*. ¶¶ 19, 20, 22.

- That Gary Futch claimed in a January 29, 2008 email to a client that "we DO NOT TRADE ON THE MARGIN capability of your account. We NEVER expose you to more than what cash you have in the account" and made the same misrepresentation orally to at least one client, and that both Gary and Bradley Futch claimed in the May 28, 2008 client letter that Tradewind would "not trade on margin as we do not want to deal with margin calls . . . . [T]he value of your account is the Maximum risk," when both Gary and Bradley Futch knew that Tradewind's clients could, in fact, receive margin calls, especially in particularly volatile markets. *Id*. ¶¶ 18, 19, 20, 22.

The Complaint also specifies that these misrepresentations by Gary and Bradley Futch were intended to and did mislead Tradewind clients into believing that Tradewind had developed a "safe" strategy for selling options, when in fact Tradewind clients were subject to enormous risks. *Id*. ¶ 21. These allegations more than satisfy the specificity requirements regarding "what" fraudulent conduct Defendants committed.

Further, to the extent that "what" extends to alleging with particularity what the Defendants obtained as a consequence of their fraudulent conduct, the Complaint satisfies that requirement as well. In particular, the Complaint alleges that, through this course of fraudulent conduct, the Defendants: (a) misled approximately 25 clients about the risks of investing with Tradewind, and thereby induced those clients to invest approximately $5.6 million with Tradewind (*id*. ¶¶ 1, 21); and (b) as a result, Gary and Bradley Futch received approximately

10

$250,000 in compensation from these clients (*id*. ¶ 14).  Defendants contend that the fact that Gary and Bradley Futch received $250,000 in compensation is somehow negated by the fact that they each subsequently filed for bankruptcy protection.  Memorandum at 15.  This is nonsense. Gary and Bradley Futch's subsequent financial losses in no way negate the fact that they received compensation from clients whom they knowingly misled into investing with Tradewind. The Complaint satisfies the "what" requirement of Rule 9(b).

      3.   <u>When</u>

The Complaint also pleads the timeframe of the alleged misrepresentations with the requisite particularity.  Tradewind operated from early 2007 until October 10, 2008, when it lost all of its clients' money, plus $5.6 million in margin calls, and ceased doing business. Complaint ¶¶ 1, 23.  Because the Complaint alleges a fraudulent course of conduct throughout Tradewind's approximately 21-month lifespan, the "when" requirement of Rule 9(b) has been met.  *See  CFTC v. Reed*, 481 F. Supp. 2d 1190, 1200 (D. Colo. 2007) (allegation that conduct occurred from at least May 2000, until approximately the summer of 2002 pled with sufficient particularity); *CFTC v. Bradley*, 408 F. Supp. 2d 1214, 1223 (N.D. Okla. 2005) (allegation that the relevant period was January 2001 through October 2002 pled with sufficient particularity); *In re Natural Gas Commodity Litig*, 358 F. Supp. 2d 336, 344 (S.D.N.Y. 2005) (allegations that conduct occurred during two time periods, from June 1999 to February 2001 and from March 2001 to December 2002 pled with sufficient particularity.); *Ettem USA, Inc. v. Kollmorgen Corp.*, 2005 U.S. Dist. LEXIS 29189 at *6 (S.D. Tex. October 29, 2005) (allegations that defendant made fraudulent statements from March 2000 until the end of its business relationship with plaintiff pled with sufficient particularity).

In addition to these general allegations regarding Defendants' course of conduct, the Complaint identifies the specific dates for several key events including: (a) Gary Futch's January 29, 2008 email to a client (Complaint ¶ 18); (b) Gary and Bradley Futch's May 28, 2008 letter to a client (*id.* ¶ 20); and (c) the October 10, 2008 trading that resulted in total losses for Tradewind's clients and margin calls in an aggregate of approximately $5.6 million (*id.* ¶ 23). The Court should find that the Complaint pleads the "when" of Defendants' fraudulent conduct with the required specificity.

4.  <u>Where</u>

The Complaint alleges that Tradewind's principal place of business was in Meridian, Mississippi and that both Gary and Bradley Futch also resided in Meridian. *Id.* ¶¶ 10-12. The Complaint also alleges that Defendants' misrepresentations were made in certain written documents and oral statements to Tradewind clients. *See, e.g., id.* ¶¶ 16, 18-20. These allegations satisfy the "where" requirement of Rule 9(b). *See, e.g, Ettem,* 2005 U.S. Dist. LEXIS 29189 at *6-7 (holding allegations regarding the towns where the parties conducted their business to establish the "where" of the fraud with sufficient particularity); *United States ex rel. Johnson v. Shell Oil Co.,* 183 F.R.D. 204, 207 (S.D. Tex. 1998) (holding allegation that misrepresentations were contained in company's monthly report established the "where" of the fraud with sufficient particularity); *Hodges v. H & R Investments, Ltd.,* 668 F. Supp. 545, 552 (N.D. Miss. 1987) (holding allegation that misrepresentations were made in Gulf Shores, Alabama, established the "where" of the fraud with sufficient particularity).

5.  <u>How</u>

The Complaint contains numerous allegations establishing "how" the Defendants engaged in their misrepresentations. In particular, they relied on word of mouth (Complaint ¶

15); provided documents including a "Trade Methodology" (*id*. ¶ 16); used the internet (*id*. ¶ 18); made oral statements (*id.* ¶ 17, 19); and sent at least one letter (*id*. ¶ 20).  As with each of the other Rule 9(b) requirements, these allegations satisfy the "how" requirement for pleading fraud with particularity.  The Court should deny the Defendants' Motion to Dismiss on Rule 9(b) grounds.

**C.   The Commission has Alleged All Required Elements For Violations of the Act**

The Court should also find that the CFTC has alleged facts sufficient to establish all of the elements of the violations of the Act set forth in the Complaint.  The CFTC is an independent government agency, not a private party, and as such, it is required only to establish that Defendants (1) made material misrepresentations or omissions in connection with commodity options transactions (2) with scienter, and (3) in connection with Count Two, that they used the mails or any means or instrumentality of interstate commerce.  As discussed below, it is well-established that the Commission, unlike a private party, need not allege reliance or proximate causation when it brings fraud actions; the Defendants' contention to the contrary has no support either in the cases that Defendants cite or elsewhere in the Act.  The Court should find that the Commission has satisfied all of its requirements for alleging violations of these provisions of the Act and Regulations.

**1.    The Commission has stated a cause of action for violation of Section 4c(b) of the Act and Commission Regulation 33.10**

Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2006), provides:  "No person shall . . . enter into or confirm the execution of any transaction involving any . . . option . . . contrary to any . . . regulation of the Commission."  Regulation 33.10, 17 C.F.R. § 33.10 (2011), provides:

> It shall be unlawful for any person directly or indirectly—(a) to cheat or defraud or attempt to cheat or defraud any other person …
> (c) to deceive or attempt to deceive any other person by any means

whatsoever in connection with an offer to enter into, the entry into, the confirmation of the execution of, or the maintenance of, any commodity option transaction.

Under these provisions, the Commission establishes a cause of action for commodity options fraud occurs when it alleges that a defendant (1) makes a material misrepresentation or omission in connection with a commodity options transaction (2) with scienter. *CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1328 (11th Cir. 2002).[3] These are the only elements that the Commission must allege in order to state a cause of action under Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation 33.10, 17 C.F.R. § 33.10, and, as discussed further below, the Complaint more than adequately establishes these elements.

Defendants are simply wrong as a matter of law when they assert that the Commission must plead the additional elements of reliance and proximate cause in connection with its claims. While Defendants briefly mention the correct elements for a Commission action under Section 4c(b) and Regulation 33.10 when they cite to *R.J. Fitzgerald* in their Memorandum at 11-12, they then proceed to rely solely on a series of Fifth Circuit cases involving private rights of action for securities fraud under Section 10b of the Securities Exchange Act, 15 U.S.C. § 78j(b) (2006). *See Cyrak v. Lemon,* 919 F.2d 320, 325 (5th Cir. 1990) (listing elements of private cause of action for securities fraud, including reliance and proximate causation); *Melder v. Morris,* 27 F.3d 1097, 1100 (5th Cir. 1994) (same); *Tuchman,* 14 F.3d at 1067 (same); *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 520-21 (5th Cir. 1993) (same). Without offering any explanation for this argument, Defendants apparently contend that the Commission should be required in this matter to establish the same elements as a private party bringing a securities fraud lawsuit. There is, quite simply, no basis for that contention. Indeed, courts have explicitly held that the

---

[3] *R.J. Fitzgerald* treated this as three elements, viewing "materiality" as separate from the "in connection with" element. *Id.* Regardless of whether these requirements are characterized as two or three elements, the Complaint more than meets them.

Commission—unlike a plaintiff in a private cause of action—is not required to establish reliance

and causation.  *See R.J. Fitzgerald,* 310 F.3d at 1328, n. 6 ("Unlike a cause of action for fraud

under the common law of Torts, 'reliance' on the representations is not a requisite element in an

enforcement action"); *Lake Shore Asset Mgmt. v. CFTC*, 511 F.3d 762, 766 (7th Cir. 2007)

("proof of reliance is not required in a regulatory agency's suit"); *Slusser v. CFTC,* 210 F.3d 783,

785-86 (7th Cir. 2000) (noting that causation is usually shown through reliance, but that reliance

is not a necessary element of a CFTC fraud action).  As discussed in detail below, the

Commission has more than adequately pled facts to establish each of the required elements for

violations of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation 33.10, 17 C.F.R. § 33.10.

### a.     Material Statements and Omissions

The Complaint establishes that the Defendants made material omissions and

misrepresentations to Tradewind clients in connection with commodity options transactions.  A

misrepresentation or omission of fact is material if "a reasonable investor would consider it

important in deciding whether to make an investment."  *R.J. Fitzgerald,* 310 F.3d at 1328-29.

S*ee also Saxe v. E.F. Hutton & Co.*, 789 F.2d 105, 109 (2d Cir. 1986).  Any fact that enables

customers to assess independently the risk inherent in their investment and the likelihood of

profit is a material fact.  *See In re Commodities Int'l Corp.*, [1996-1998 Transfer Binder] Comm.

Fut. L. Rep. (CCH) ¶ 26,943, at 44,563-64 (CFTC Jan. 14, 1997).  This includes facts that

significantly alter the total mix of information already in the client's possession.  *See Madel v.

Anspacher & Assoc., Inc.*, [1987-1990 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 24,412 at

35,813 (CFTC Mar. 14, 1989).

Here, the Complaint alleges that the Defendants made numerous material

misrepresentations and omissions in connection with the sale of commodity options, including:

(a) misrepresentations regarding Gary and Bradley Futch's respective roles with Tradewind (Complaint ¶ 17); (b) Gary and Bradley Futch's promises to Tradewind clients that Tradewind would never place more than 25% of its clients' funds at risk at one time (*id.* ¶¶ 19-20); (c) Gary and Bradley Futch's claim that Tradewind clients would never receive margin calls (*id.* ¶ 19-20); and (d) Gary and Bradley Futch's statement that Tradewind would never leave its clients' options spreads "naked" (*id.* ¶ 20).  All of these misrepresentations and omissions were material, as it is substantially likely that Tradewind's clients would consider this information important in making their investment decisions and that these misrepresentations and omissions affected the clients' abilities to independently assess the risks inherent in their investments with Tradewind. The allegations in the Complaint more than adequately establish this element of a violation of Section 4c(b) of the Act and Regulation 33.10.

### b.  Scienter

The Complaint also pleads that the Defendants acted with the scienter required to establish fraud under Section 4c(b) and Regulation 33.10.  Scienter "refers to a mental state embracing an intent to deceive, manipulate, or defraud."  *CFTC v. Rosenberg*, 85 F. Supp. 2d 424, 448 (D.N.J. 2000) (*citing Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976)).  The Commission, however, "need not show that defendants acted with an evil motive or an intent to injure. . . rather, recklessness is sufficient to satisfy the scienter requirement."  *Rosenberg,* 85 F. Supp. 2d at 448 (internal quotations and citation omitted); *see also Drexel Burnham Lambert, Inc. v. CFTC*, 850 F.2d 742, 748 (D.C. Cir. 1988) (holding recklessness to be sufficient to establish a scienter in connection with commodity futures fraud).  Furthermore, "knowledge cannot be precluded by ignorance brought about by willfully or carelessly ignoring the truth." *CFTC v. Savage*, 611 F.2d 270, 283 (9th Cir. 1979).

The allegations in the Complaint more than establish the requisite scienter.  In particular, the Complaint alleges that the Gary and Bradley Futch knew or recklessly disregarded that:  (a) the risks inherent in selling options were much higher than they led their clients to believe; (b) that all Tradewind clients could be subject to margin calls; (c) that to use only 25% of a customer's funds to make a particular trade did not mean that the customer's maximum possible losses on that trade were limited to that 25%; and (d) that, despite their statements to the contrary, their trading strategy involved frequently leaving trades "naked" during the trading day, with the hope that the market would move in a favorable direction before the end of trading. Complaint ¶¶ 22, 25.  These allegations more than establish the requisite scienter on the part of Defendants.

**2.     The Commission has stated a cause of action for violation of Section 4$o$(1) of the Act**

The Complaint also sufficiently alleges that Defendants violated Section 4$o$(1) of the Act, 7 U.S.C. § 6$o$(1) (2006), which broadly prohibits fraudulent transactions by CTAs and their APs. Section 4$o$(1)(A) makes it unlawful for a CTA or its APs to employ any device, scheme or artifice to defraud any participant or prospective participant by "use of the mails or any means or instrumentality of interstate commerce."  Section 4$o$(1)(B) of the Act makes it unlawful for a CTA or its APs to engage in any transaction, practice or course of business that operates as a fraud or deceit upon any participant or prospective participant by "use of the mails or any means or instrumentality of interstate commerce."  These sections apply to all CTAs and their APs, whether registered, required to be registered, or exempt from registration.  *See CFTC ex rel. Kelly v. Skorupskas*, 605 F. Supp. 923, 932 (E.D. Mich. 1985).

Section 4$o$(1) of the Act is a "parallel" provision to Section 4c(b) in that conduct that violates Section 4c(b) can also violate Section 4$o$(1).  *See, e.g., CFTC v. Aurifex Commodities*

*Research Co.*, No. 1:06-CV-166, 2008 WL 299002 at \*8 (W.D. Mich., Feb. 1, 2008) (finding

that, because defendants were acting as CPOs, their misappropriation in violation of Sections

4b(a) and 4c(b) of the Act also constitutes a violation of Section 4*o*(1) of the Act) (citing

*Skorupskas*, 605 F. Supp. at 932-33); *CFTC v. Weinberg*, 287 F. Supp. 2d 1100, 1108 (C.D. Cal.

2003) (finding that the same conduct that violates Section 4b(a)(i), (iii) also violates Section

4*o*(1)).  Thus, the same misrepresentations and omissions by Defendants that constituted options

fraud in violation of Section 4c(b) and Regulation 33.10 can also establish a violation of Section

4*o*(1) of the Act.

       Section 4*o*(1) does, however, differ from Section 4c(b) in three respects.  First, a

violation of Section 4*o*(1) can only be established if it involves use of the mails or any means or

instrumentality of interstate commerce, unlike a violation of Section 4c(b).  *Compare* 7 U.S.C. §

6*o*(1) *with* 7 U.S.C. § 6b.  Second, Section 4*o*(1) is limited to fraud committed by commodity

pool operators, CTAs, and their APs.  *Davis v. Coopers & Lybrand*, 787 F. Supp. 787, 798 (N.D.

Ill. 1992), *abrogated on other grounds by Damato v. Hermanson*, 153 F.3d 464 (7th Cir. 1998).

Third, while scienter is required to establish a violation of Sections 4b and 4*o*(1)(A), it is not

required to establish a violation of Section 4*o*(1)(B).  *See Messer v. E.F. Hutton & Co.*, 847 F.2d

673, 677-79 (11th Cir. 1988); *Weinberg*, 287 F. Supp. 2d at 1108.

       The Complaint contains allegations establishing all of these requirements.  First, it alleges

that Defendants used instrumentalities of interstate commerce, including telephones, email, and

mail to place trades and to communicate with clients.  Complaint ¶¶ 23, 36.  Second, Defendants

were registered with the Commission as a CTA (Tradewind) and APs of a CTA (Gary and

Bradley Futch).  *Id.* ¶¶ 10-12.  Finally, to the extent scienter is required to establish a violation of

Section 4*o*(1)(A), the Complaint establishes the requisite scienter, as discussed above in Section

IV.C.1.b.  Thus, the Commission has stated a cause of action against the Defendants for violation of Section 4*o*(1)(A) and (B) of the Act.

## V.      CONCLUSION

For the reasons set forth above, the Commission respectfully requests that the Court deny the Defendants' motion to dismiss.

Dated:          April 2, 2012                          Respectfully submitted,


                                                         /s/ Jennifer E. Smiley
                                                         Jennifer E. Smiley
                                                         Joseph A. Konizeski
                                                         Scott R. Williamson
                                                         Rosemary Hollinger
                                                         U.S. COMMODITY FUTURES
                                                         TRADING COMMISSION
                                                         Division of Enforcement
                                                         525 West Monroe Street, Suite 1100
                                                         Chicago, IL  60661
                                                         (312) 596-0530 (Smiley)
                                                         (312) 596-0546 (Konizeski)
                                                         (312) 596-0714 (facsimile)
                                                         jsmiley@cftc.gov
                                                         jkonizeski@cftc.gov